# STATE OF MICHIGAN

# COURT OF APPEALS

GAYLE H. SIGAN,

        Plaintiff-Appellant,

v

JESSICA A. DEZIEL,

        Defendant-Appellee.

UNPUBLISHED
June 2, 2015

No. 320570
Marquette Circuit Court
LC No. 13-051139-NI

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

In this action under the Motor Vehicle Personal and Property Protection Act (also referred to as the "no-fault" act), MCL 500.3101 et seq., plaintiff appeals as of right from an order granting defendant's motion for summary disposition and dismissing her claim for economic damages. A previous order granted defendant's motion for partial summary disposition in which defendant asked the trial court to dismiss plaintiff's claim for noneconomic damages based on a determination that she had not suffered a threshold injury. Plaintiff argues on appeal that the trial court erred by dismissing her claim for noneconomic damages because there was a genuine issue of material fact as to whether she had sustained a serious impairment of body function, and that the trial court further erred in concluding that she was not entitled to economic damages. We affirm.

## I. FACTS

Plaintiff and defendant were involved in an automobile collision on February 1, 2012, in Marquette. According to plaintiff, she had come to a stop in the road when defendant, driving behind plaintiff's vehicle, hit the rear of the vehicle after failing to stop. The police were not called to the scene, but plaintiff reported the incident to law enforcement officers five days later. The trial court noted that photographs of plaintiff's car following the accident showed that it did not have any noticeable damage. Plaintiff eventually filed an action against defendant alleging that she had suffered various injuries as a result of the accident, including a right ankle injury requiring surgery; aggravation of preexisting conditions, including arthritis and fibromyalgia; and "potential loss of future earning capacity."

-1-

## II. SERIOUS IMPAIRMENT OF BODY FUNCTION

Defendant argued that plaintiff was not entitled to recover noneconomic damages because she had not suffered a serious impairment of body function as required under MCL 500.3135. The trial court concluded that plaintiff had several long-standing medical issues at the time of the collision that affected her ability to stand, walk and lift, and noted that plaintiff had reported being in near "continual pain" beginning in 2001 up to the time of the accident. Plaintiff argued that although she had preexisting medical conditions, they were worsened by the accident. In addition, plaintiff claimed that her ankle injury was caused by the accident and had resulted in a serious impairment of body function entitling her to damages under the statute. We agree with the trial court that plaintiff did not suffer a serious impairment of body function as a result of the accident, and is not entitled to noneconomic damages.

MCL 500.3135(1) provides that "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, *serious impairment of body function*, or permanent serious disfigurement." The statute defines "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). Our Supreme Court has held that the statute sets forth "three prongs that are necessary to establish a 'serious impairment of body function': (1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 194-195; 795 NW2d 517 (2010). We find that plaintiff has established the first two prongs of *McCormick*, but has failed to establish the third prong.

Plaintiff presented sufficient evidence to show that she suffered "an objectively manifested impairment" as a result of the accident. *McCormick, supra*, at 195. For purposes of deciding defendant's motion, the trial court accepted plaintiff's testimony and that of her podiatrist that her ankle injury was caused by trauma suffered during the accident. In *McCormick*, the Court made clear that evidence of an *injury* did not establish the first prong because "injury" and "impairment" were not synonymous. *Id.* at 197. The Court found that "an injury is the actual damage or wound, [whereas] an impairment generally relates to the effect of that damage. Accordingly, when considering an 'impairment,' the focus is not on the injuries themselves, but how the injuries affected a particular body function." *Id.* (citations and internal quotation marks omitted). The Court also held that a patient's testimony regarding her pain and suffering was not sufficient to meet the threshold required by the statute, and that medical testimony was required. *Id.* at 197-198.

In the instant case, plaintiff testified that her ankle injury caused significant pain and limited mobility. Plaintiff's podiatrist testified that plaintiff's ankle was injured by a traumatic event, and that the injury required surgery and hampered plaintiff's ability to walk during her recovery. The statute does not require that an impairment be permanent in order to be considered a serious impairment of body function. *McCormick, supra*, at 203. Accordingly, the testimony of plaintiff and her medical provider was sufficient to meet the first prong of the statute.

We also find that plaintiff established that her impairment affected an important body function. MCL 500.3135(5); *McCormick, supra*, at 199. In *McCormick*, the Court stated that this prong requires "an inherently subjective inquiry" and "must be decided on a case-by-case basis." *Id.* The ability to walk is generally considered to be an important body function, and this ability was important to plaintiff specifically, as she testified that she walked frequently for recreation prior to her injury. Although the extent of the effect of plaintiff's ankle injury on her walking habits is a matter of dispute between the parties, plaintiff established that her ankle surgery impeded her ability to walk during her recovery, and that she had to use a walking boot and a walker in order to walk. This evidence was sufficient to establish that plaintiff's impairment affected an important body function.

The third prong of the statute requires a court to determine whether the impairment "affects the person's general ability to lead his or her normal life." *McCormick, supra*, at 200 (internal quotation marks omitted). In *McCormick*, the Court stated that the common understanding of this phrase means "to have an influence on some of the person's capacity to live in his or her normal manner of living." *Id.* at 202. The Court stated further that "[d]etermining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident," which is a "subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis." *Id.* Moreover, an injured person's ability to lead his or her normal life need not be "destroyed," but only "affected." *Id.* We conclude that plaintiff did not establish this prong of the statute because the evidence did not show that there was a measurable difference between her normal life before and after the accident.

Defense counsel presented a document in which plaintiff claimed to have been "totally disabled" as a result of a previous accident around 1995. Defendant also presented a questionnaire that plaintiff had filled out in 2001 in which she claimed that she was unable to walk for more than four blocks because of pain in her legs, and that she needed to stop every one to two minutes to rest because of her pain. In the same document, plaintiff also claimed to have ceased all of her recreational activities because of her pain. In addition, plaintiff had stated that although she was able to cook, wash dishes, and do laundry, these tasks took her "[f]orever" and she had to take ten minute breaks while doing them. In a document plaintiff filled out in July 2002, she claimed to be unable to work due to back pain that radiates into her legs and neck and to have suffered from the same since 1995. In a 2005 decision of an administrative law judge (ALJ) concerning plaintiff's request for supplemental security income payments, the ALJ noted that plaintiff has arthritis in both knees and cannot kneel or stoop, has fibromyalgia, frequently feels exhausted and sick and has very little energy, has hand pain which she attributes to carpal tunnel syndrome and that plaintiff was unable to perform even a full range of sedentary work.

Plaintiff testified that as a result of the automobile accident with defendant, she was not participating in any recreational activities because she was "always sick" and had "isolated" herself "because [she was] basically embarrassed of everything going on with me." Plaintiff also testified that she was unable to work as a result of her injuries from the accident. Regarding her abilities following the accident, plaintiff testified that she could walk on a treadmill for up to twenty minutes and perform some light household tasks, including some cleaning and light loads of laundry, grocery shopping, and basic cooking.

We find that plaintiff's description of her life following the accident is not significantly different from her life in the years preceding the accident as demonstrated by the record. Her domestic and recreational activities are virtually the same, and she indicated that she had difficulty walking long before the accident occurred. Plaintiff was disabled and asserted that she was unable to work before the accident, as well as after it. The trial court did not err in finding that there was no appreciable difference in plaintiff's "normal life" before and after the automobile collision, and that plaintiff therefore was not entitled to recovery of noneconomic damages.

## III. ECONOMIC DAMAGES

Pursuant to MCL 500.3107(1)(b), personal protection benefits are payable for "[w]ork loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured." Defendant argued that plaintiff did not have a valid claim for work loss because she was unable to work at the time of the accident and so had not lost wages as a result of her injuries, and the court granted the motion on this basis.

In *Davis v State*, 159 Mich App 734, 738; 407 NW2d 1 (1987), we held that under the no-fault act, "work loss benefits are available to compensate injured persons for the income they would have received but for their accidents. Accordingly, a party seeking work loss benefits under § 3107(b) must show actual loss; a mere loss of earning capacity is not sufficient." " 'Loss of earning capacity' is what an injured person *could* have earned but for the injury. 'Work loss' is loss of income from work an injured person *would* have performed if he had not been injured." *Ouellette v Kenealy*, 141 Mich App 562, 565; 367 NW2d 353 (1984), aff'd 424 Mich 83; 378 NW2d 470 (1985) (citations omitted). Under *Davis* and both *Ouellette* decisions, plaintiff was not entitled to work loss benefits.

Plaintiff testified that she had not worked since 2006, and was not currently able to work or to seek work. Plaintiff claimed that at the time of the accident, she had been planning to look for a full-time position as a social worker after completing her degree, which she received in May 2013. Under the statute, however, plaintiff may not be compensated for the alleged disruption of her future plans. Since plaintiff was not working at the time of the accident and her claim for work loss was based on her prospective loss of earning capacity as a future social worker, she is not entitled to work loss damages.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto